ITURRINO, PLAINTIFF AND APPELLEE, *v.* ITURRINO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Aguadilla in an Action to Recover Inheritance and Annul Proceedings.

No. 1378.—Decided July 28, 1916.

CIVIL REGISTRY—PARISH PRIESTS—INSPECTION BY BISHOP.—Before the law and regulations promulgated by the Spanish Government in January, 1885, went into effect the civil registry was kept by the respective parish priests under the supervision of the bishop who when visiting the towns of the diocese examined the parish records in which births, marriages and deaths were registered.

ID.—ROMAN CATHOLIC CLERGY—STATE FUNCTIONARIES—SEPARATION OF CHURCH AND STATE. — As a general rule, by reason of its organization, mission, formation, functions, lawfully recognized rank and legal services rendered, the Roman Catholic clergy was a department of the State under Spanish sovereignty. The parish priests, as well as the bishop, were State officials. The change of sovereignty brought with it the separation of Church and State.

ID.—NATURAL CHILD—ACKNOWLEDGMENT.—As the civil registry prior to 1885 was in charge of the parish priests under the supervision of the bishop, all of whom officiated as public functionaries, their functions in connection with baptismal certificates extended to the contents of the said documents. In these certificates the parish priests were required to state, among other things, the names of the parents of the child and its civil status; hence, if it were a natural child its father could acknowledge it before the parish priest, and when made in due form the acknowledgment was effective in law.

ID.—NATURAL CHILD — BAPTISMAL CERTIFICATE — ACKNOWLEDGMENT — MARGINAL ENTRY.—In the year 1884 the Superior Ecclesiastical Government was empowered to order, at the request of the father, the institution of proceedings for the acknowledgment of the natural filiation of a child in order that

the said acknowledgment might be shown by means of a marginal entry on the baptismal certificate already issued, when the father had not made such acknowledgment in the certificate itself, and from that moment the baptismal certificate and the marginal entry served as evidence, not only of the baptism and of the date on which it took place, but also of the acknowledgment of the child.

ID.—ID.—AUTHENTIC PROOF.—The courts are always inclined to favor the natural child when the acknowledgment is manifest and made publicly, whatever the manner in which it is made, provided there is authentic proof thereof.

ID.—ID.—BAPTISMAL CERTIFICATE.—The acknowledgment of a natural child made in 1884 by a marginal entry on the baptismal certificate by the parish priest in accordance with proceedings instituted at the request of the father and by order of the Superior Ecclesiastical Government, is a voluntary acknowledgment made in a solemn and authentic manner.

HEIRS—WILL—OMISSION OF NATURAL CHILD—SPECIAL BEQUESTS AND LEGACIES.— Pursuant to section 802 of the Civil Code, the institution of a legitimate son as sole heir by the father in his will from which an acknowledged natural child of the testator is omitted, is null and void, although special bequests and legacies made therein shall be valid if not inofficious.

The facts are stated in the opinion.

Mr. *Juan de Guzmán Benítez* for the appellant.

Messrs. *José Sabater* and *Francisco Soto Gras* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is an appeal by the defendant from a judgment rendered by the District Court of Aguadilla on June 3, 1915, in the above-entitled case.

In his complaint of October 20, 1914, the plaintiff alleges that he is the natural son of Dr. Juan Dionisio Iturrino Rivera, authentically acknowledged as such by a decree of the Superior Ecclesiastical Government of October 3, 1884; that on October 8, 1913, Dr. Iturrino Rivera died in Cataño, leaving a will which was executed in the city of San Juan on July 4, 1912, and in which he designated defendant Camila Teresa Iturrino Rivera, born of his marriage with Micaela Rivera Ríos, as his sole heir; that the partition of the estate left by Dr. Iturrino Rivera was made on May 18, 1914, by the widow, the executor and the defensor of the minor defendant, and was approved by the District Court of Aguadilla on June 4, 1914,

and protocoled in the office of Notary Carlos Franco Soto; that the widow, Micaela Rivera Ríos, died in Arecibo on June 17, 1914; that neither in the will of the deceased Iturrino Rivera nor in the partition of his estate was any mention made of the hereditary rights of the plaintiff, thus unlawfully depriving him of the hereditary share thereof which the law gives him as the acknowledged natural child of his deceased father, Dr. Juan Dionisio Iturrino Rivera.

The complaint concludes with a prayer for judgment as follows: (1) That the will executed by Juan Dionisio Iturrino Rivera on July 4, 1912, is null and void; (2) that the partition of the estate of the deceased Iturrino Rivera is also null and void; (3) that the plaintiff is entitled to the hereditary portion allowed him as the acknowledged natural son of the deceased; (4) that the defendant pay the costs, expenses, disbursements and attorney fees.

The defendant demurred to the said complaint on the ground that it did not state facts sufficient to constitute a cause of action and the demurrer was overruled by the court on December 2, 1914. Thereupon the defendant filed an answer, denying that the plaintiff is the authentically acknowledged natural child of Dr. Juan Dionisio Iturrino Rivera, or that the latter had executed any public instrument in which he recognized the plaintiff as his natural child. The other allegations of the complaint were admitted by the defendant.

The case went to trial and the court rendered the judgment for the plaintiff which has been appealed from.

The only question of law submitted for consideration in this appeal regarding the right claimed by the plaintiff in the estate of Dr. Juan Dionisio Iturrino Rivera is whether he should be held to be the acknowledged natural son of Iturrino Rivera, as claimed by the plaintiff-appellee and denied by the defendant-appellant. In synopsis, the latter alleges that the certificate introduced in evidence to prove such acknowledgment does not constitute authentic proof of that act,

for the essential reason that at the time of the so-called act
of acknowledgment, as well as at present, the ecclesiastical
authority had no jurisdiction to pass upon the civil status.
of persons.

To quote literally from the statement of the case, the
evidence introduced by the plaintiff at the trial consisted of
"a certificate issued by Carlos Ormaechea, clerical notary
of the bishopric of Porto Rico, from which it appears that
in the year 1894 plaintiff Luis Iturrino López was acknowl-
edged as the natural child of Dr. Juan Dionisio Iturrino
according to the ecclesiastical laws."

Nothing is said regarding the contents of the said cer-
tificate and any omission should be considered as favoring
the findings of the judge in his opinion setting forth the
grounds of the judgment appealed from.

The court expresses itself in the following language:

"The documentary evidence shows that in a memorial written.
from San Sebastián on April 8, 1884, and addressed to the bishop·
of the diocese of Porto Rico, Dr. Juan Dionisio Iturrino y Rivera
stated that, having determined to educate according to his means his:
young son born of María de la Cabeza López and appearing as a
natural child in the accompanying baptismal certificate, he considered
it just to give his own surname to his said son for the advantages;
which would accrue therefrom both to the child and to the mother
in society, and desired therefore to acknowledge his said son and
to authorize the entry of such acknowledgment in the parish records..
The said baptismal certificate shows that the child whom the petitioner·
sought to acknowledge is named Luis Felipe Augusto, the natural
child of María de la Cabeza López, and was baptized on March 9,
1879, at the age of seven months in the parochial church in the town
of San Sebastián. It also appears from the said certificate that,.
having been commissioned by the ecclesiastical authority of the diocese
to carry out the proceedings for the acknowledgment requested, Rev.
Quintín O. Perdomo, parish priest of San Sebastián, first proceeded
to take the testimony of the witnesses produced by the petitioner,
Juan Dionisio Iturrino, and the following witnesses appeared and
testified under oath, namely: María Cabeza López, mother of the
child Luis Felipe Augusto, José María Lugo and Francisco Lugo,.

all of age and residents of the said town of San Sebastián. The witnesses were examined as to the facts stated in the original petition presented by said Dionisio Iturrino, and their testimony fully confirmed and corroborated the same. Thereupon the superior ecclesiastical authority approved the said proceedings by decree of October 3, 1884, authorizing the said priest of San Sebastián to record the acknowledgment, as requested, on the registry of birth of the child Luis Felipe Augusto, on page 78 of Book 26, etc., and to state that he did so by virtue of this decree. In connection with this decree there appears at the foot of the certificate of the child's registry of birth a marginal note which reads literally as follows: 'Acknowledged by Dr. Juan Dionisio Iturrino to be his son by virtue of the decree of the superior ecclesiastical authority of October 3, 1885, at the request of the said Iturrino and in compliance with the order of the superior ecclesiastical authority contained in the said decree, which has been filed for record.' "

It will be seen that in a written petition addressed to the superior ecclesiastical authority of the diocese of Porto Rico, Dr. Juan Dionisio Iturrino spontaneously and voluntarily acknowledged the plaintiff as the natural son of himself and María de la Cabeza López, and for the purpose of placing the said acknowledgment on record he petitioned for the institution of the proceedings in which the said decree of October 3, 1884, was rendered.

The ecclesiastical authority did not decide any controversy regarding the acknowledgment of the child Luis Iturrino López, but, at the instance of Dr. Iturrino, simply instituted proceedings for the purpose of recording the acknowledgment in accordance with his desire. Any litigious question relating to civil status was then as now left to the exclusive jurisdiction of the courts.

And the bishop of the diocese had authority to proceed as he did. Before January, 1885, when by a decree of the Spanish Government the civil registry law and regulations went into effect, the parish priests had charge of the civil registry under the supervision of the bishop who upon the occasion of his visits to the towns of the diocese examined

the records of the parishes in which the records of births, marriages and deaths were entered. The parish priests, as well as their prelate, were assistant public functionaries of the State. In defining and penalizing the crime of falsification of public documents by public officials the penal code then in force by virtue of a Royal Decree of May 23, 1879, provided that any ecclesiastical minister committing the same with reference to acts or documents which might affect the civil status of persons, should incur the penalty prescribed; and among the public documents specified by the law of civil procedure are included certificates of births, marriages and deaths issued according to the registry by the parish priests or by those in charge of the civil registry. As a general rule, by reason of its organization, mission, formation, functions, lawfully recognized rank and legal services rendered, the Roman Catholic clergy was a department of the State under the Spanish sovereignty, according to judgments of the Supreme Court of Spain of April 29, 1885, and March 13, 1888, relating to matters of a penal nature.

Although, as we held in the case of *Díaz Caneja* v. *Marxuach*, 8 P. R. R. 458, the Roman Catholic Apostolic Bishop of Porto Rico ceased to exercise official public functions at the time of the change of sovereignty which brought about the separation of Church and State, this court is of the opinion that he did exercise the same during the Spanish sovereignty.

As a consequence of the fact that the civil registry was kept by the parish priests under the supervision of the bishop, who all acted as public officials, their functions, referring to registries of births exclusively, were necessarily extended to include the contents of such records in which the parish priests were required to state, among other things, the names of the parents and grandparents of the child, the nature of the child's filiation and the names of the godparents; therefore, if the child were a natural child, its

father could acknowledge it before the parish priest and when so acknowledged in the proper manner the acknowledgment was effective in law. Escriche, Dictionary of Law and Jurisprudence, Vol. III, p. 58, and Vol. IV, p. 255, ed. of 1876.

In the case of *Rivera* v. *Cámara*, 17 P. R. R., 503, we held that "a baptismal certificate stating that the person christened is an acknowledged natural child of some other person, without reciting that such person made the acknowledgment before the priest who made the entry, nor certifying that such acknowledgment took place in the presence of witnesses. who testified to the truth thereof, is not a sufficient document to establish the acknowledgment of the party concerned as. a natural son." Of course, *a contrario sensu*, when such facts are stated in the certificate it should be deemed sufficient to prove the acknowledgment. Such is the case at bar in which by a marginal note on the record of birth of plaintiff Luis Iturrino, in compliance with the decree of the superior ecclesiastical authority, his natural filiation with. relation to Dr. Iturrino was stated, and from that moment the baptismal record with the marginal note became not only proof of the baptism and of the date thereof but also of the acknowledgment of the child.

We understand that after a record of baptism, marriage, or death had been entered and attested in the proper register, the functions of the parish priest ceased absolutely and he was not authorized to make any alteration except by order of competent authority, or of the bishop who had supervision over the books of the parish; but if the father of the natural child did not make the acknowledgment on the same record with the proper formalities, he was allowed to apply for leave to amend by inserting a marginal note of such acknowledgment, for which purpose he was required to appear before the ecclesiastical court and present his petition accompanied by a copy of the record, praying that his request be granted after proving that his claim was just.

*Tratado Teórico-Práctico de Procedimientos Eclesiásticos,* by Francisco Gómez Salazar and Vicente de la Fuente, Vol. I, pp. 496, 511, ed. of 1868. Dr. Juan Dionisio Iturrino followed this procedure in the present case.

In the case of *García et al.* v. *Garzot,* 18 P. R. R. 835, we held that in 1895 the ecclesiastical authority had power to hear and decide proceedings relative to the record of a baptismal certificate in the registry; and this being the case, it seems that we should hold as a logical consequence that in 1884 the said authority was authorized to order, as it did, that proceedings should be brought for the acknowledgment of the natural filiation of the plaintiff in order that such acknowledgment might be made to appear by a marginal note on the record of baptism already made.

Neither the memorial of Dr. Iturrino to the superior ecclesiastical authority of the diocese of Porto Rico, nor his signature thereto, nor the testimony of the witnesses who testified at the proceeding for acknowledgment, has been attacked as fictitious or false, and only the authenticity of the acknowledgment is denied on the ground that the ecclesiastical authority of the diocese was not empowered to hear and decide the proceeding for acknowledgment.

We are of the opinion that the acknowledgment was voluntary and spontaneous and made in a solemn and authentic manner. In any event the question of whether the ecclesiastical court really had jurisdiction of the case under consideration is of but little importance, for the courts are always inclined to favor the natural child when the acknowledgment appears clearly and publicly, in whatever form such acknowledgment may be made, if an authentic record of the same remains. *Pérez Villamil et al.* v. *Romano et al.,* 19 P. R. R. 832. The appellant has not cited any case of the Supreme Court of Spain contrary to the foregoing doctrine.

The appellant contends that the lower court erred in holding that the will executed by Juan Dionisio Iturrino y

Rivera omitting the plaintiff as a forced heir by reason of his status as acknowledged natural child was null and void.

Section 802 of the Civil Code plainly provides that the omission of any or of all the lawful heirs in the right line, whether they be living at the time of the execution of the will or whether they are born after the death of the testator, shall annul the institution of an heir, but trusts and betterments shall be valid when they are not inofficious.

In conformity with that provision, the designation by Dr. Juan Dionisio Iturrino of the defendant as his sole heir to the exclusion of the plaintiff, who is his acknowledged natural son, is void, but the validity of the betterments and legacies made in the said will should be sustained.

For the reasons stated the judgment appealed from should be affirmed, except as to its holding that the will executed by Dr. Juan Dionisio Iturrino is null and void, it being understood that it is null and void only as to the designation of the defendant, María Camila Teresa de Jesús Iturrino Rivera, as his sole heir, and that the plaintiff should be allowed his share of the hereditary rights under the law in force at the time of his father's death.

*Modified and affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.